Good morning, your honors. Good morning. Tom Peterson, appearing for the appellants, and I would like to reserve two minutes. Okay, keep your eye on the clock. We'll try to help you, but it goes down, of course. Thank you. May it please the court, Tom Peterson appearing for the appellants. I would This is an unusual timber sale case that came from the United States Department of the Interior, who in an attempt to cooperate between the environmental community and the logging industries needs to comply with the ONC Lands Act, which is a historical act that provides for logging in southwestern Oregon and northern European, as I'm sure some of you are aware, gave an opportunity for economic development of the southwestern area of Oregon, in this case by virtue of the fact that too many jobs were being lost, logging jobs, and on the other hand environmentalists were concerned about preserving spotted owls, fauna, flora, and other land-bearing animals. So this is a very special project that was drawn up by a couple of university professors in conjunction with members of BLM, and eventually prospectuses were done, EISs were done, and a bidding process was set out. The bidding process required that timber companies, for example in this case defendant appellee of Boise Cascade, look at these things and determine what kind of sale is this? Well this is a scale sale, partial cut sale, which meant that only some trees could be taken, and in fact by contract reserved from taking were all hardwood trees, including madrone trees, which is the pertinent type of tree in this case. That didn't work so well because in this instance, in the area in which we were speaking, the madrone trees, the oak trees, other hardwood trees grew in and among softwood trees, such as Douglas firs and to take the trees down. Counsel, you can obviously argue the case however you want, but for my purposes, we've read the briefs, both of us, all three of us have read the briefs and are familiar with what you've just told us. Okay. But maybe you can help me by indicating specifically what duty of care was breached in this case and by whom? I'm sorry? What duty of care was breached in this case and by whom? Okay, here's the situation. I think that the district court erred in its order by making a determination that the plaintiffs had presented no facts that would... Wait a minute, you're going on a different... Maybe I'm hearing it the wrong way. You're going a different way. Before we get to the procedural aspect of it, I want to know, I feel very sorry for your client by the way, I think anybody on the court would, but the reality is in order to have established liability, you have to show that a duty of care was owed to your client. My specific question to you is what duty of care was breached and by whom? I'm sorry, I didn't hear the word duty. Sorry. Okay. That's what I'm looking for. That's what I'm looking for. I apologize. That's okay. The duty is set forth by the Oregon Employers Liability Law, which provides that every owner and employer must, not may, not maybe, but shall, must employ every care, precaution and device to protect the safety of the workers regardless of cost. And so in this case, what was not done... What's the citation for that please? That's Oregon 6 ORS 654. Excuse me, Your Honor, I think .53 if I'm not mistaken. So that's the duty of care that you're relying upon. That's the statutory duty of care. Then there's common law, which is the fact that a property owner and anybody who is a third party, in a case such as this, has a duty, a common law duty of care to make sure that in a situation where there is a high risk of injury, such as in timber falling, that those persons that are hiring them, at least in third party instances, provide a duty of care, provide for the safety of the worker. So you claim that the statutory duty of care that you've cited... Yes. ...was owed to your client by all of the named defendants. Is that correct? Yes, Your Honor. Absolutely. And there is ample authority for that in the Ninth Circuit case law. There's Thorn v. U.S. I know that's a California case, but there are others that I've cited in the brief that I won't repeat here. Essentially, the duty of care is a non-delegable duty, and in that instance, this is where we run into the problem with how the district court looked at the case, because basically what he said was that it's on the timber cutter to figure out what to do. It's his duty. Wasn't he basing that, though, on what the records showed, that people were making such distinctions. They would see a hardwood tree and a softwood tree, and if they thought it was dangerous, they would pass. I thought there was evidence in depositions that that was the case. Am I mistaken? No, you are not mistaken, but that's like that there are two things to this. Is there a dispute in the facts on that? The answer is yes. Mr. Hanscom complained about the fact that BLM made him cut things that weren't safe to cut. My client said repeatedly that he was told a couple of times by, first of all, Craig Brown of BLM told him two weeks before his accident, don't cut hardwoods. But he also testified that he couldn't recall whether he was ever told not to cut a reserve tree. No, that's not exactly, a closer reading. ER 1720, 1712. Okay, I think a closer reading of it says there was no discussion that he recalled about whether you could cut trees for safety. The fact of the matter is, Ed Hanscom instructed him on the first day, reserve trees are out. And it only came after the cutters went into the woods, that they saw that there were hardwoods in the corridors, that the cutters went back to him and said, hey, we can't make a harvest out of this. We can't cut all these trees down. They're reserved. And so BLM came out and said, well, you can cut the trees in the corridors, the hardwoods in the corridors, but leave the ones outside, especially the large ones. You've got to leave them alone because they're reserved for cutting. Let me ask you, do any of the witnesses in their deposition testimony address whether they had discretion to cut a tree outside the yarding corridor? I'm sorry, Your Honor, I missed that. Do any of the witnesses in their deposition testimony address whether they had the discretion to cut a tree outside of this yarding corridor? Well, sure. I think that you would find that a lot of the tree cutters, and certainly Mr. Hanscom, anybody who's on the other end of this lawsuit is going to say, well, they had discretion to cut if it was a safety issue. But in terms of what, as a general rule, the rule was no, you may not. I noticed your client seemed to emphasize the size and the location of the tree somewhat in his testimony. What, can you tell me why he was doing that? There's a reason for that. Ed Hanscom testified and also produced a writing, and it's at ER 1908, which says, preserve the large legacy trees, large hardwoods. And so my client was aware of that proscription, and therefore, looking at a tree that's outside the corridor, that's a large madrone, a hardwood, he knew he couldn't cut it. He was prescribed from cutting it, and so he did the only thing that he knew how to do, which was to cut the tape tree or the harvest tree, which was sitting smack dab in the middle of the corridor, and which for practical purposes had to be taken down since there was at least a weeks of logs laying downhill that needed to be yarded up the hill. You were talking about something a little bit ago, and I wanted to follow up. So are all of the theories of liability premised on a violation of a regulation or safety code provision? No. Those are just some of the things. And basically, what I was trying to do for the court was to lay out something that had gone completely ignored, which is there are forestry regulations. An employer and an owner has to pay attention to these things, even as BLM and Mr. Hanscom and even Boise's representatives stated in their depositions. We are bound by the Oregon Administrative Regulations and federal regulations of the same sort. And so in that, I pointed those out for the court, saying, look, every day somebody with a superintendent's mind, that is experience, has to be on site to determine, is there a hazard to these workers? And if there is, that tree or tree has to be removed. Then can you tell me about the role that discretion has in the ELL? Because it appears that the district court, you know, had it all come down to discretion. And is Mr. McKenzie's discretion, assuming he had any relevant to that claim at all? Right. The district court, I think, got discretion because there was a crew of people who was doing whatever they wanted. But that's like saying a bunch of jaywalkers, if you see them, it must be okay to cross on the red light because everybody else is breaking the rule. I don't think there was any discretion given to Mr. McKenzie, because if you look at not only the contracts, but the statements that were made to him, the orders that were given by BLM and by Hanscom's own foreman, stay away from the hardwoods. What discretion did he have? That's why I'm a little perplexed, and I'll be asking your colleagues across the aisle here. Yes. So why, in your view, did the district court focus so heavily on discretion without addressing the other theories of liability? That is a mystery to me, but it's the way that the defendants couched their motions for summary judgment. It was all Mr. McKenzie's fault. And, in fact, if you look at the jury instructions on the Employer Liability Act, Mr. McKenzie's discretion, to the extent that he exercised it, is only an element of comparative fault. It doesn't even touch the defendant's liability or duties under the ELA. So all I can say is that it looks like what the district court was made a determination, and it sure seems like maybe there's an affirmative defense here of some sort that might cut into Mr. McKenzie's verdict if he obtains one. I have one quick question. Go ahead. Didn't a half a dozen cutters testify that they felt that they had the discretion when necessary to cut or not cut where safety was a factor? Yes, there were people who testified to that fact, but it's not in the contract. In the BLM contracts, Section 28 and so on, authorization had to be obtained pursuant to the BLM contract. That is, an authorized officer of the Bureau of Land Management had to come out to the scene and say, okay, I see what you're talking about. You can cut this tree. Or not. You mean every time they cut a tree, someone had to come out there? No. No, there were certain trees that were designated to be cut. Those were softwood trees. And then there were others that were marked as reserve trees. And then there were some that weren't marked but were reserved by virtue of the nature of their species. And so, for example, Your Honor, in this case, a madrone tree, which is a hardwood tree with a large canopy that provides cover to animals and fauna, those were out of bounds from cutting. And so even though people were saying, well, I had the discretion to do this, it's nowhere in the contract. And in fact, the BLM officer's inspection field notes from January 2012 indicate that even Ed Hanscom came to him and asked for permission to cut three big oaks because he knew, as well as anybody else, that the hardwoods were out of bounds. The fact that other timber cutters did not follow the prescriptions is not the issue here. They should not be leading this Court around to make the determination that Mr. McKenzie had a discretion he did not possess. Counsel, you said you wanted to save some time. We've got you almost down to nothing here. I'll tell you what, we'll give you a minute to respond, but let's hear from the other side, okay? Thank you very much, Your Honor. You're welcome. Good morning, counsel. Good morning, Your Honors. May it please the Court. James Cox, appearing on behalf of the United States of America. I've conferred with counsel for the other defendants, Your Honor, and counsel have been gracious enough to allow me to take the bulk of the time for the defendants, probably ten minutes, to discuss the district court's findings of facts with respect to the summary judgment decision with respect to all defendants, leaving a few minutes left for the other counsel to address some legal arguments about indirect employer liability under the ELL. Okay. Your Honor, this is a tort case in which the plaintiff bears the burden of identifying some basis of fault by the defendants that caused his accident. It is not a strict liability case. Regardless of whether the claims are viewed under the Oregon ELL, the statutory claim, or common law negligence, the plaintiff has to identify something that the defendants did or did not do that caused the injury, and as well, identify specific facts that identify that this action was not done. Mr. Cox, help me understand what happened here below, because the district court said that Mr. McKenzie's discretion is at the heart of the case, but didn't really explain that comment at all. So I wanted to ask you, and I don't know if it's you or your colleagues over there, is discretion at the heart of this case, or I guess more importantly, is it a defense to liability under the ELL? And if so, how can that be if Mr. McKenzie has advanced what appears to be multiple theories of liability in the single ELL claim? Judge McGeeh, what the district court identified, the discretion that Timberfellers had, is at the heart of this case. And the reason for that is that is the one specific thing that plaintiff identified in his complaint that the defendants did not do give him discretion that could have avoided the accident. And even now, at this point in time, there's plaintiff is saying, you didn't give me any choice. And Judge Clark identified based on the record that, no, that discretion really did exist. And that addressed the one claim of fault that the plaintiff identified in his complaint. Well, Mr. McKenzie, I believe, testified that he did not feel he had the discretion to cut down a reserve tree for safety reasons that was outside of this yarding corridor. Why isn't that enough to defeat summary judgment? I'm just concerned that the district court may have weighed credibility here. The district court didn't, Your Honor, and the reason is because Mr. McKenzie cannot raise a dispute of material fact based on what his subjective belief in his head. But when it's cornered on discretion of the employee, how is that the case? Well, Your Honor, I think it would be good to identify hypotheticals or other situations in which a dispute of fact really would exist. And the best example I can think of is if Mr. McKenzie had backed away from that tree and said, I don't think it's safe to cut this tree down. That other tree is in the way. And if I don't think I have discretion, I want to be sure I don't do anything safe. And if the defendant had then said, no, you have to do that, that would be clear factual evidence based on the defendant's action that the policy is not what they claim. Well, let me ask you, is there anywhere in the record where cutters testify that they cut unmarked hardwoods outside of one of the designated corridors? There is, Your Honor. And I think Boise's brief really laid out in detail the testimony regarding all of the individuals who uniformly said in their deposition that they had that discretion. And it wasn't just the representatives of the groups. It seems like the majority of the testimony, at least from my review, suggests that discretion was only exercised within the corridor where defendants agreed certain hardwoods could be cut. In this instance, it was a madrone right outside the corridor. And that's what — it seems that that's what Mr. McKenzie was focused on in his testimony. The testimony, Your Honor, is from all five of the other fellers. And their testimony was that there is an environmental prescription, there are certain trees that we have to — are supposed to cut, certain trees that we're not as part of this sale, but safety comes first. And if there's a hardwood that needs to be cut in order to safely cut down trees, then we have the discretion to do that. Or, on the other hand, if the feller prefers it, not cut the harvest tree so that safety is achieved that way. Either one of those two options were options that were exist. There's no evidence that defendants did anything that suggests that the policy is not what the defendants are claiming. There was no timber fellers that were disciplined. There were no timber fellers that were scolded. Is there any — anywhere in the record where the cutters testify that they exercised their discretion to cut large rather than small hardwoods? There seems to be a distinction made by the BLM with regards to the large hardwoods. And it seems like a lot of the evidence suggests that small hardwoods could be cut, but a large tree, you know, would give cutters much more pause. Here, there was a madrone with a large tree. I'm just trying — it seemed to be that's what Mr. McKenzie was focused on. Well, I think, Judge Merguia, if you look at what Mr. Hanscom said, it's certainly the smaller hardwoods are less of a concern. But the point is that safety comes first, and that if a hardwood needs to be cut for safety reasons, then it can. And the timber fellers, Mr. Holzhauser, Mr. Freeman, Mr. Berg, they testified that they had that discretion. And I would bring the Court back to the point that there's no evidence that the policy was anything but what the defendants are claiming now. Even the contract documents that Mr. Peterson has brought up here, those documents also make clear that trees can be cut for safety reasons. That's even in the contract. Now, the procedure by which that's done may not be laid out specifically in the contract or may not emphasize that Mr. Brown from BLM did what he did, which is said, if you need to do it, you have that discretion. But all of the representatives for Boise, the timber purchasers, said that BLM gave them that discretion. I guess the other question I have, and we discussed it a little bit here earlier, I guess I want to understand your theory or your understanding on why the district court did not take it into account. I mean, there were some regulations that were argued in the plaintiff's response to the motion for summary judgment. And is it your position that they weren't relevant? It's not our position, Judge Mergia. Our position is that Judge Clark actually considered everything that plaintiff argued in his opposition to summary judgment. The problem with plaintiff's citation to these rules is they – plaintiff still does not explain what defendants were supposed to do based on these rules that would have avoided the accident. Well, but don't safety rules and regulations, assuming they apply, which they would apply to your clients, correct? Correct, Your Honor. All right. Wouldn't that give rise to the statutory duty of care? It does, Your Honor, if the defendants are indirect employers. But even there, the rules were the defendants' supposed to do. And to his credit, plaintiff identified in his complaint the one thing that he claims that defendants did not do that would have avoided this accident. And that is give him discretion to take certain actions, either cutting a hardwood reserve tree or permission discretion not to cut the harvest tree that would have avoided the accident. All of these citations to safety rules don't include any other actions that plaintiff claims that the defendant should have taken. And so that's why Judge Clark essentially said that's what this case boils down to. It's about whether Mr. McKenzie sitting there had the discretion, the ability to avoid this accident if he felt it was unsafe for him to do so. And he did, based on the undisputed facts, had that discretion. And I think it's important. Kennedy, counsel, may I just interrupt for this one question? You say that he had that discretion. What's the best evidence that you have that he was clearly told that he had discretion to cut the reserve tree in this instance? Your Honor, I would say that he's removed himself as a witness by saying he doesn't recall. I get that. I get the conflicting statement. But what external evidence, from the anything in the record, indicates that he was expressly told that he had discretion to not cut or rather to cut the reserve tree in this case? Your Honor, I would point to Mr. Hanscom's testimony where he passed out written instructions to this effect that testified that safety, that indicated that safety comes first and that if timber fellers needed to, that's an ER0541, that they could Is that the meeting that the plaintiff said he did not attend or wasn't there? I think the plaintiff said that he couldn't recall what discussions were had there about safety cutting. And this gets to the plaintiff's reply brief. Right. Where plaintiff kind of He does admit he was at the meeting where this written documentation was passed out. He just doesn't remember. Is that correct? He was at that meeting. Yes, Your Honor. I believe. I think there's some question as to whether everyone's referring to the same meeting. But he was at a meeting before the operation started where he was told what the overlying prescription was. Here we're cutting softwoods, conifers. Hardwoods are not part of the sale. However, here's kind of the extra layer. And this is where plaintiff kind of dissects the questions at deposition with respect to the counsel's question of, well, what were the discussions there about safety? And those instructions were passed out before the plaintiff even started working. Correct? Correct, Your Honor. So I'm not quite sure how that relates to this plaintiff and this case. But, you know, I'm still struggling with that the plaintiff here advanced six theories in his complaint, and not only discretion. And the only one that the district court dealt with, in a rather perfunctory order of 16 pages in light of all that was presented here and the thousands of pages in the record, I'm just a little perplexed as to why the other theories were not addressed. Judge McGee, I believe that's because the other theories in some ways recite Your Honor, that's not really stated in the 16-page order. Do you agree? Oh, I agree, Your Honor. Okay. But, Your Honor, I think it goes back to the point that Judge Clark identified what is this case about? What is the plaintiff claiming the defendants were at fault for the accident? In other words, what did defendants do or not do? And what are the facts that support this statement? And the discretion there is the only, even now, it's the only item that the plaintiff is saying that. Well, how do those discretion relate to the other six theories? Well, I think, Your Honor, the. Because if you tell me, that's going to be the first time I'm hearing it. I mean, I understand what you're saying that the district court, and I think the district court was probably well-intentioned, but it's not clear in the order how that discretion specifically relates to the other theories of liability presented. And you're doing, I think, you know, a good job of that, but it's still not clear to me, even based on what you've said. Your Honor, I think the first theory was a timber sale shouldn't have occurred here. The land's just too dangerous, too steep. The prescription made it too tough. The BLM shouldn't have authorized a timber sale. That's the first claim. And under Bexar Medicine, that claim just cannot be brought against the government based on the discretionary function exception to liability. There's just a host of policy-based indications, which Mr. Peterson began his argument pointing out, and liability cannot be brought on that basis. But I would also point out that plaintiff never argued these other theories in the complaint at summary judgment. So even though the defendants explained why liability could not be based on those theories, the plaintiff essentially abandoned those and turned to theories that weren't even pled in the complaint based on these statutes. And, Your Honor, before I close, I wanted to make one point about the — Just make this observation. You've got about 30 seconds left. None of your colleagues have had a chance to say anything yet. I don't know whether they care, but most of the time they do. Thank you, Your Honor. I would submit. Thank you. Okay. Counsel, we'll give you a minute here because you only have 18 seconds, but we're going to expand that. No, thank you, Your Honor. And I will be very brief. And really, all I want — first let me start. I'm Dan Lindahl representing Boise Cascade. What I want to highlight is going all the way back to where we started this morning, Judge Smith, with your question, what's the source of the duty here? And you'll see Boise's brief devotes some considerable attention to the fact that neither the ELL nor common law negligence apply to Boise, which was not the indirect employer of this plaintiff, did not have a common law duty because the plaintiff had the specialized knowledge and expertise to perform this job that Boise, a mill owner, not a logging company, did not have. Let me — to follow up on that, there's an Oregon case, Boothby v. D.R. Johnson. I'm sure you're well familiar with it. Yes. Under that case, what's Boise's best argument that it is not an indirect employer? Boise's best argument — of course, the judge here said that this was a common enterprise between Boise and — well, I'm not even sure who, apparently between Rogers Contract Cutting, which Boise didn't know was even on the site. But to have a common enterprise, you have to have employees in intermingled duties and responsibilities performing the risk-creating activity. You know, ironically, the theory here is that Boise's employees weren't even on the site. They weren't participating, yet somehow they have intermingled duties and responsibilities. Well, they plainly didn't. Boise hired Hanscom, who hired Rogers Contract Cutting, who hired the plaintiff. Boise's several steps were moved, and it had nothing to do with this operation. Okay. Thank you. Any questions that my colleagues have of these folks on the other side? All right. Thank you. So we'll give you a minute to respond. Oh, you've got one more. Let's — we'll give you a minute as well. We don't have a huge docket this morning, so we're opening it up for a minute here. Okay. David Jacobs for HM Inc. and Ed Hanscom. And the only thing — I think the Court has covered a lot of bases here. One thing that was not in the district court opinion, and I just want to emphasize it, is that there is no basis to hold Mr. Ed Hanscom individually liable in this case under the ELL or the common law. It's undisputed he was acting as HM's representative at all times. He wasn't a contractor. He wasn't an employer. He was basically working for the company. And did the district court agree with you on that? It didn't address it. It — It disagreed with your prior colleague regarding the joint — the issue that was just discussed regarding which employers would be liable. Right. The indirect liability. Indirect. Yeah. Exactly. And HM is also agreeing with Boise on that, that the Court should have found that they are — where HM is not an indirect employer under the ELL for the common enterprise. Again — Is that a legal question or a question of fact that ought to be determined by a trier of fact? Your Honor, it's — in my experience with ELL cases, it typically is a matter of law. At least that's typically where you — where you get out of ELL cases is that — where it's an indirect employer. The reason it's always an indirect employer because the workers comp, they don't go after their own employer. Okay. So typically that's the main door out. Okay. But again, I just want to emphasize again that Mr. Hanscom, whatever happens with everybody else, Mr. Hanscom has no personal liability in this case and needs to be out of the case. And I'm — you're not throwing them under the bus, I'm sure. Absolutely not. No. Absolutely not. Of course not. Thank you, counsel. Thank you, Your Honor. I appreciate it. Okay. We'll have a — you know I'm just kidding you. Okay. You've got a minute, counsel. Go for it. Thank you for the opportunity to appear before you today. With respect to the conflicting evidence of Mr. McKenzie, I'm submitting to the court that if you look at every statement he has made that is in the record, it has been consistent that he had no discretion to cut hardwood trees except those that had been authorized by BLM. And in fact, two weeks before his accident, BLM officer Craig Brown told him, after McKenzie informed him that he had cut some small hardwoods inside the corridor for the clear-cut purpose, Mr. Brown said, stay out of the hardwoods, don't cut them. That's a disputed fact in this case, and summary judgment was improper. With respect to the written instructions so-called that Mr. Hanscom apparently— Counsel, forgive me, but you're over your time. I have just one quick follow-up, though. Yes. I think Mr. Cox said that you abandoned some of your theories of this case. Do you agree with that? I do not. Why not? It was the defendants who picked out the wrong issue, only a comparative fault issue that reached the court on this case. In all instances, we argued that it was the safety of the faller that was at risk, and if you look at each element of the pleaded negligence in ELA, that's what that is about. Mr. McKenzie was handcuffed between that harvest tree and that reserve tree, and he shouldn't be held in this case to be, what, less than a man, less than somebody who went out to do his job as he was told. Thank you. Other questions? Go ahead. One other question. What do you say he should have been told in that circumstance? I think what he should have been told is what he should have been told was that it's okay we have a supervisor standing by whom you can reach by this radio, which we are giving you, or we have a supervisor standing by to come down and help you, because that's exactly what the Oregon Administrative Rules on Forestry mandate, that there be a supervisor, a knowledgeable person present to work out this particular problem. When there was an intractable issue that a tree cutter could not determine on his own, he was supposed to have a supervisor there. And neither the owner, whether it's BLM or Boise as the owner or Hanscom as Boise's representative, had any of that, thus depriving Mr. I don't mean to interrupt you, so continue, but does it have anything to do with the fact that they didn't tell him one thing or another about safety? It's just that they didn't have someone there to help him with this problem. Right. They didn't describe safety to him. In fact, he was told you can't cut this, you can cut the other. But safety was not discussed. Other questions about my colleague? What should they have told him about safety? What they should have told him, Your Honor, again, is that we're going to comply with the Oregon Forestry Rules, and if you have a problem with this, find a supervisor. But in this instance, you have to understand something. This timber sale contained miles and miles of forested area with just forestry roads going every which way. And, in fact, BLM and Boise and Mr. Hanscom didn't have representatives out on the site every day, so there was no one there really to advise him of safety. If they had been, they would have complied with the regulations, and Mr. McKenzie never would have been hurt. So there should have been someone there every day to advise about safety? Yes. On site every day as required by Oregon Forestry regulations, and as anticipated by the Bureau of Land Management, Mr. Luce testified to that, and he was one of the authorized officers on the site when they were there. There's a document, I think Judge Smith alluded to, a handwritten document that you may or may not have received that said hardwood can only be cut for safety reasons. I understand that. So would that have, if that had been told to your client, would that have satisfied you? Well, I think it would have led to other questions, which is, okay, who's going to be around to help us in case we have an even more difficult problem? But the fact of the matter is that document is not really authenticated because Mr. Hanscom dumped his entire file, and nobody seems to really know where that document came from. It just popped up in deposition and was identified by Mr. Hanscom as being the one that he thinks he created, but if you will note, he created one a month later saying, well, actually, you don't cut the big hardwoods, you can only cut the little ones. So his statements, written or otherwise, are certainly ambiguous, except to the extent that they have, he told Mr. McKenzie, stay out of the hardwoods. They are reserved from this cut. Other questions from colleagues? Thank you. Well, I apologize there's not more time, gentlemen. I know it's always hard when there's more than one lawyer, so you know that. So thank you all for your argument. We appreciate it very much, and we will decide the case in due course. The case just argued is submitted.
judges: M. Smith, Murguia, Korman